(Reap. Dec. 9017)

A. NEWBERG & CO., INC. *v.* UNITED STATES

Entry No. 828012.

(Decided October 31, 1957)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the defendant.

DONLON, Judge: This appeal to reappraisement challenges the value, as found by the appraiser, of one hundred chests of a confectionery described as toffee candy.

The candy was exported from England. It was entered at the port of New York. The official papers were not put in evidence, and no evidence was adduced in proof of the date of exportation. Plaintiff's brief states that exportation was in May 1950, and defendant's brief more specifically states that the candy was exported on May 22, 1950.

Statements in briefs, unsupported by proofs of record, are not evidence of facts. Time of exportation is a fact basic to the fixing of United States value of imported merchandise. From these statements in the briefs, however, I accept it as a fact that is conceded by the parties, for purposes of this appeal, that May 22, 1950, was the date of exportation of the merchandise, within the meaning of section 402 of the Tariff Act of 1930, as amended. If it is some other date, plaintiff has failed in this important element of its case.

The toffee was appraised on the basis of cost of production. In its appeal to reappraisement, plaintiff contends that there is United States value and that it is the proper basis of appraisement under section 402.

Both parties concede that there was neither foreign nor export value, in England, for such or similar merchandise, as of the time of exportation (R. 3), whatever that time was.

The nub of the appeal, as the parties have presented their arguments, is whether certain sales, that were made by plaintiff within the United States in states outside its allegedly restricted territory for sale of this candy, are tantamount to country-wide offering of this merchandise, as the basis on which the court may find that there is United States value and what that value is. We are asked by plaintiff to find that offerings in some western states, even if offered in breach of a contract obligation not to sell the toffee outside the eastern states, constituted the free offering of such candy for sale throughout the United States, in the usual wholesale quantities and in the ordinary course of trade. Defendant's argument appears to be that sales made in violation of plaintiff's alleged agreement to sell the candy only in the eastern states, did not constitute the free offering of such merchandise throughout the United States, within the statutory meaning.

It is not necessary, in deciding this appeal, to rule on this broad issue of law, as the parties have urged. Even if plaintiff's contention should be sound (and this I do not decide), I am of opinion plaintiff has failed to prove its case.

Evidence was presented relative to whether there was or was not, at the time of exportation, an agreement which restricted plaintiff's sales territory for this candy to the eastern states of the United States. In addition, plaintiff offered in evidence a considerable batch of invoice copies (collective exhibit 1).

Copies of what are said to be 164 sales invoices (sometimes the sale solely of toffee, and sometimes also of a variety of merchandise, including toffee) are included in collective exhibit 1. All purport to be carbon copies of original invoices rendered by plaintiff to various customers. For the most part, the copies are of invoices for sales made to customers in states that are east of the Mississippi River.

What territory the parties intended to include within the alleged restrictive agreement to sell only in the eastern states, is not clear from the evidence of record. The only state that is mentioned in the record by name, as being an excluded state, is California. Whether or not there was such an agreement, sales made in states east of the Mississippi are not, without further proofs, evidence of the free offering of this merchandise *throughout the United States*.

There are 59 out of the 164 invoice copies in collective exhibit 1 which, on their face, seem to indicate that the invoices had to do with sales in parts of the United States that are west of the Mississippi. The other 105 invoices do not. Presumably, the court is asked to

weigh these 59 invoices as evidence that there was a free offering of such candy for sale to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade throughout the United States.

Thirty-eight of these 59 invoices are made out to Walgreen Drug Stores, at locations in various western states. Walgreen Drug Stores is a drug chain with its central offices in Chicago, Ill. (R. 32). There is testimony that Walgreen made these purchases at its Chicago office for delivery "at their request to various localities in the United States." (R. 33.) The testimony is that "in a few cases" Walgreen Drug Stores bought individually (R. 33), but there is no evidence to identify which, if any, of these invoices have to do with those few cases, where those particular Walgreen Stores were, or in what quantities and at what prices such sales, if any, were made. Sales to a single purchaser at a central office, for distribution to its outlets in several states, are not the proof which the statutory formula contemplates of a free offering *to all purchasers* throughout the United States.

Eight of the remaining 21 invoices bear dates in May 1950. The other 13 bear dates that are between June 6, 1950, and October 26, 1950. These 13 may be disregarded as proof either of a free offering or of price at the time of exportation. *United States* v. *Robert Reiner, Inc.,* 35 C. C. P. A. (Customs) 50, C. A. D. 370. If they do, in fact, relate to offerings in May 1950, that fact is not shown.

The eight May invoices are as follows:

| | | |
|---|---|---|
| May 5 | Scruggs, Vandervoort & Barney, Inc. St. Louis, Mo. | 126 lbs. Assorted Toffee at 24 cts. per lb. |
| May 18 | Awful Fresh MacFarlane Oakland, Calif. | 378 lbs. Palm Bulk Toffee at 24 cts. per lb. |
| May 18 | Awful Fresh MacFarlane Los Angeles, Calif. | 378 lbs. Palm Bulk Toffee at 24 cts. per lb. |
| May 18 | Dikran's Candies San Francisco, Calif. | 126 lbs. Palm Toffee Assorted at 24 cts. per lb. |
| May 19 | The Bartell Drug Co. Seattle, Wash. | 1,260 lbs. Palm English Toffee at 24 cts. per lb. |
| May 23 | Eldredge's Burlingame, Calif. | 1 doz. 1-lb. Palm Toffee Tins at 6.60. |
| May 25 | Townsends Los Angeles, Calif. | 1 doz. 8-oz. Palm Toffee at 4.00. |
| May 26 | Morton M. Schilt (Kays Candies). Portland, Oreg. | 2⅔ doz. 1-lb. Palm Toffee Tins at 6.60 per doz. |

Five are dated prior to May 22, 1950. These five include one sale made to a customer in St. Louis, Mo. (that is, on the west bank of

the Mississippi) and four sales to customers on the West Coast. As to the latter, there is on each of the copies, as they were put in evidence by plaintiff, a notation as follows: Walgreen-Chicago. While this reference to Walgreen-Chicago on these West Coast sales is not explained, the status of these four invoices as proof of a free offering *throughout the United States* is clouded somewhat by the association that is evidenced in collective exhibit 1 between these West Coast invoices as possible Walgreen-Chicago sales, similar to other sales as to which there was testimony.

The three invoice copies that are dated subsequent to May 22, 1950, reflect sales which, on plaintiff's theory of the case, are not in the usual wholesale quantities. These three invoices are for 12 pounds, 6 pounds, and 32 pounds, respectively, of toffee. Evidence adduced is that the usual wholesale quantity of toffee is 126 pounds (R. 16).

The invoice copies (collective exhibit 1) are plaintiff's only evidence as to what the claimed United States value is. They show a uniform price of 24 cents per pound for sales of 126 pounds or more. Plaintiff offered no proof of the price of 26 cents per pound, for which its brief argues. However, since I find that there is no basis, on the proofs of record and under the law, to find that there was United States value at the time of exportation of this candy from England, it is not necessary to decide between the claim in plaintiff's brief and in its proofs as to what United States value is.

The burden of proof laid on plaintiffs in appeals to reappraisement is, admittedly, a heavy burden. It was laid by Congress. This court may not indulge in presumptions to supply proofs which the statute requires.

I find as facts:

1. That the merchandise of this appeal consists of confectionery toffee candy, exported from England on May 22, 1950.

2. That, at the time of exportation, such or similar merchandise was not freely offered in England for sale to all purchasers for home consumption or export.

3. That plaintiff has not shown by competent proofs that there was United States value, at the time of exportation, for such or similar merchandise, nor what (if there were such value) the value is.

I conclude as a matter of law:

1. That, at the time of exportation, there was no foreign, export, or United States value for the toffee candy, subject of this appeal, as value is defined in section 402 of the Tariff Act of 1930, as amended.

2. That plaintiff has failed to overcome the presumptively correct appraised value of the toffee candy, subject of this appeal, and that the value thereof is that returned by the appraiser.

Judgment will be entered accordingly.